## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| WILL-BURN RECORDING & PUBLISHING CO.,<br><br>   Plaintiff,<br><br>v.<br><br><br>UMG RECORDINGS, INC.,<br>DEF JAM RECORDINGS,<br>SO SO DEF RECORDINGS,<br>CAPITOL RECORDS d/b/a EMI Records,<br>UNIVERSAL MUSIC GROUP<br>DISTRIBUTION, CORP., SUNO, INC.,<br>REPUBLIC RECORDS, RADIO KILLA<br>RECORDS, WARNER CHAPPEL<br>MUSIC d/b/a WC Music Corp., and<br>ISLAND RECORDS,<br><br><br>   Defendants. | CIVIL ACTION FILE NO.:<br><br>**JURY TRIAL DEMANDED**<br>**COMPLAINT FOR DAMAGES** |

## COMPLAINT

COMES NOW, the Plaintiff, Will-Burn Recordings and Publishing Co. d/b/a Will-Burn Records, d/b/a Wash Production, d/b/a Wash Recording and Publishing, by and through the undersigned counsel, and files this Complaint.

## INTRODUCTION

This is an action to vindicate Will-Burn Recordings and Publishing Co.'s civil rights for copyright infringement by UMG Recordings, Inc., Universal Music Group

1

Distribution, Corp., Def Jam Recordings, So So Def Recordings, Capitol Records d/b/a EMI Records, Suno, Inc., Radio Killa Records, Republic Records, Warner Chappel Music d/b/a WC Music Corp.,  and Island Records.

## JURISDICTION AND VENUE

1. This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; and the Music Modernization Act, 17 U.S.C. § 1401.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, §1332 and 1338(a), base on federal question jurisdiction.

3.  Venue is proper in this District as to Defendants under 28 U.S.C. §1391(b)(2), 1332, §1400(a).

4. All of the acts committed by Defendants occurred within the Southern District of the State of Alabama.

## PARTIES

5.  Plaintiff, Will-Burn Recordings and Publishing Co, d/b/a Will-Burn Records, d/b/a Wash Production, d/b/a Wash Recording and Publishing, is a corporation organized under the laws of the State of Alabama. Plaintiff Will-Burn Recordings and Publishing Co. has its principal place of business at P.O. Box 81112, Mobile, Alabama 36689.

6.  Defendant UMG Recordings, Inc., is, upon information and belief, a corporation existing under the laws of the state of Delaware and has its principal place of business at address 2220 Colorado Avenue, Santa Monica, California 90404.

7.  Defendant Universal Music Group Distribution, Corp., is, upon information and belief, a corporation existing under the laws of the state of Delaware and has its principal place of business at address 1755 Broadway, New York, NY 10019.

8.  Defendant Def Jam Recordings, is, upon information and belief, a corporation existing under the laws of the state of New York and has its principal place of business at address 1755 Broadway, New York, NY 11019.

9.   Defendant So So Def Recording, is, upon information and belief, a corporation existing under the laws of the state of Georgia and has its principal place of business at address 8735 Dunwoody Place, STE N, Atlanta, GA 30350.

10. Defendant Capitol Records d/b/a EMI Records, is, upon information and belief, upon information and belief, a corporation existing under the laws of the state of Delaware with its principal place of business at 1750 North Vine Street, Hollywood California, 90028. Capitol Records, Inc. is the principal,

indirect U.S. subsidiary of the EMI Records, a United Kingdom corporation. EMI produces, manufactures, distributes, and markets prerecorded music, among other things. EMI Music Distribution is a division of Capitol Records, Inc. which manufactures, markets and distributes prerecorded music, among other things.

11. Defendant Island Records, is, upon information and belief, upon information and belief, a corporation existing under the laws of the state of New York with its principal place of business at 1755 Broadway New York, NY 10019.

12. Defendant Suno, Inc, is, upon information and belief, a corporation existing under the laws of the state of Delaware with its principal place of business at 17 Dunster Street, Cambridge, Massachusetts 02138.

13. Defendant Republic Records, is, upon information and belief, a corporation existing under the laws of the state of New York with its principal place of business at 1755 Broadway New York, NY 10019.

14. Defendant Warner Chappel Music d/b/a WC Music Corp., is, upon information and belief, a corporation existing under the laws of the state of New York with its principal place of business at 1633 Broadway New York, NY 10019.

15. Defendant Radio Killa Records, is, upon information and belief, a corporation existing under the laws of the state of Delaware with its principal place of business at 6320 Canoga Ave Ste 1300 Woodland Hills, CA 91367; Registered Agent (Corporation Service Company) at address 2 Sun Court, Ste 400 Peachtree Corners, GA 30092.

**STATEMENT OF FACTS**

16. In 1998, Plaintiffs created, wrote, recorded and copyrighted original lyrics and music compiled in the album "*Dogs In The Hood*" (music and song lyrics registered with the United States Copyright Office for a Work of the Performing Arts, on or about December 5, 2000, registration no. PAU 2-564-008). Later, Plaintiffs created, wrote, recorded and copyrighted original lyrics and music compiled in the album "*Dogs In The Hood*" (music and song lyrics registered with the United States Copyright Office for a Work of the Performing Arts, on or about December 5, 2000, registration no. PAU 2-564-008).

17. The album *"Hay Girl"* contained the song entitled *"Back Aways"*. The album "*Dogs In The Hood*" includes the songs entitled "*Back Aways*" (a song cleared with Broadcast Music Inc., on August 13, 2006, reference no. 004465597) and "*My Love Is True*" (a song cleared with Broadcast Music,

Inc., reference no. 005278189). Plaintiffs have been performing and publishing the copyrighted work since November 1998.

18. The album *"Living In A Glass House"* contained the song entitled *"Little Red Riding Hood"* (music and song lyrics registered with the United States Copyright Office for a Work of the Performing Arts, on or about November 2, 2012, registration no. PAU 3-666-797). Plaintiffs have been performing and publishing the copyrighted work since November 2012.

19. The albums and the songs bore copyright notices clearly indicating the ownership by Willie Ash and Morris Barnes, d/b/a Will-Burn Recording & Publishing Co.

20. These songs contain material wholly original with the Plaintiffs' and are copyrightable subject matter under the laws of the United States.

21. At some time subsequent to the release of the Asserted Works, Defendants copied portions of the songs "*My Love Is True*" and "*Little Red Riding Hood*." Upon information and belief, Defendants used a technique commonly referred to as "sampling" and "Generative AI" to copy portions of the Asserted Works.

22. Upon information and belief, Defendants used the sampled copies to create loops which were incorporated into the Accused Recordings (Defendants UMG Recording, Inc., Universal Music Group Distribution, Corp., Def Jam

Recordings, Def Jam Recordings, So So Def Recordings, Capitol Records d/b/a EMI Recording, Island Records, Republic Records, Warner Chappel Music d/b/a WC Music Corp., Radio Killa Records, and Suno, Inc., and AI generated programs used for recordings (Defendant Suno, Inc.).

23. Specifically, Olivia Dean (United Kingdom) is a major pop-soul artist released "*Man I Need*" from her album *The Art of Loving* which was under business relationships with Defendant Capitol Records d/b/a EMI Recording, Defendant Island Records, Defendant Republic Records, Defendant UMG Recordings, Inc., and Defendant Universal Music Group Distribution, Corp. have infringed the copyrights of the Plaintiff's song and instrumentals, "*Little Red Riding Hood*". Defendants have continued to infringe upon the copyrights of the Plaintiff.

24. Furthermore, specifically, The-Dream (Terius Adamu Ya Gesteelde-Daimant Youngdell Nash) is a major American R&B, pop, and hip-hop artist released "*My Love*" featuring Mariah Carey from his album *Love vs. Money* which was under business relationships with Defendant UMG Recordings, Inc., Defendant Universal Music Group Distribution, Corp., Def Jam Recordings, Defendant Island Records, Defendant Capitol Records d/b/a EMI Recording, Defendant Radio Killa Records, and Defendant Warner Chappel Music d/b/a WC Music Corp., have infringed

7

the copyrights of the Plaintiff's song and instrumentals, "*My Love Is True*". Defendants have continued to infringe upon the copyrights of the Plaintiff.

25. Additionally, specifically, Mariah Carey is a major American R&B artist released "*We Belong Together*" from her album *The Emancipation of Mimi* which was under business relationships with Defendant UMG Recordings, Inc., Defendant Universal Music Group Distribution, Corp., Def Jam Recordings, Defendant Island Records, Defendant So So Def Records (Jermaine Dupri), have infringed the copyrights of the Plaintiff's song and instrumentals, "*My Love Is True*". Defendants have continued to infringe upon the copyrights of the Plaintiff.

26. Notably, Defendant Suno, Inc., is the company behind Suno AI, or simply Suno, a generative AI service that creates digital music files within seconds of receiving a user's prompts. Building and operating a service like Suno's requires at the outset copying and ingesting massive amounts of data to "train" a software "model" to generate outputs. For Suno specifically, this process involved copying decades worth of the world's most popular sound recordings and then ingesting those copies into Suno's AI model so it can generate outputs that imitate the qualities of genuine human sound recordings. Suno charges many of its users monthly fees to use its product and produce digital music files, which are designed to entertain, evoke

8

emotion, and stoke passion just like the genuine sound recordings Suno copied.

27. Given that the foundation of its business has been to exploit copyrighted sound recordings without permission, Suno has been deliberately evasive about what exactly it has copied. This is unsurprising. After all, to answer that question honestly would be to admit willful copyright infringement on an almost unimaginable scale. Suno's executives instead speak publicly in exceedingly general terms. For example, one of Suno's investor, Brian Hiatt, stated in an article for Rollingstone *"A ChatGPT Music is Here"* that "if [Suno] had deals with labels when this company got started. I probably wouldn't have invested in it. I think that they needed to make this product without the constraints."

28. Of course, it is obvious what Suno's service is trained on. Suno copied Plaintiff's copyrighted sound recordings *en masse* and ingested them into its AI model. Suno's product can only work the way it does by copying vast quantities of sound recordings from artists across every genre, style, and era. The copyrights in many of those sound recordings are owned or exclusively controlled by Plaintiff. In other words, if Suno had taken efforts to avoid copying Plaintiff's sound recordings and ingesting them into its AI model, Suno's service would not be able to reproduce the

convincing imitations of such a vast range of human musical expression at the quality that Suno touts. Suno's service trains on the expressive features of these copyrighted sound recordings for the ultimate purpose of poaching the listeners, fans, and potential licensees of the sound recordings it copied.

29. Suno is not exempt from the copyright laws that protect human authorship. Like any other market participant, Suno cannot reproduce copyrighted works for a commercial purpose without permission. Heedless of this basic principle, Suno's unauthorized copying erodes the value and integrity of Plaintiffs' copyrighted sound recordings with rapid and devastating impact. Suno's service generates music with such speed and scale that it risks overrunning the market with AI-generated music and generally devaluing and substituting for human-created work. Suno already has over 10,000,000 users generating music files using its product, with some outputs amassing upwards of 2,000,000 streams. These digital music files have been released to the public—some already finding their way onto the major streaming services—and compete with the copyrighted sound recordings that enabled their creation; yet Suno sought no permission from and gives no credit or compensation to the human artists or other rightsholders whose works fueled their creation.

10

30. Suno also profits substantially from its infringement of Plaintiff's copyrighted sound recordings. Suno's latest funding round raised $125 million, valuing the company at approximately $500 million. Suno further touts a roster of high-profile backers and has monetized its service, charging users up to $24 per month for its highest subscription tier. None of that would be possible without the vast troves of copyrighted sound recordings that Suno copied to train its AI model.

31. Suno cannot avoid liability for its willful copyright infringement by claiming fair use. The doctrine of fair use promotes human expression by permitting the unlicensed use of copyrighted works in certain, limited circumstances, but Suno offers imitative machine-generated music—not human creativity or expression. Moreover, the Copyright Act enumerates four factors to assess whether an unauthorized use is fair, none of which favors Suno's product. These factors are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. In these circumstances, the purpose of Suno's use of Plaintiff's copyrighted sound recordings is quintessentially commercial and creates directly competitive digital music files that serve the same

11

purpose as the recorded music Plaintiff create and substitute for genuine recordings by humans; Suno copies the key expressive features of Plaintiffs' copyrighted sound recordings; those copyrighted sound recordings are at the core of copyright protection; and Suno's infringement undermines both existing and potential commercial markets for selling, licensing, and distributing sound recordings.  If left unchecked, Suno risks upending whole segments of the legitimate music industry.

32. At its core, this case against Defendant Suno is about ensuring that copyright continues to incentivize human invention and imagination, as it has for centuries.  Achieving this end does not require stunting technological innovation, but it does require that Suno adhere to copyright law and respect the creators whose works allow it to function in the first place similar to the other Defendants infringing on the rights from the catalogue of the Plaintiff including albums and songs such as "*My Love is True*" and "*Little Red Riding Hood*".  Plaintiff has duly registered each of the Plaintiff's works.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Copyright Infringement of Post-1972 Copyrighted Recordings**
(Against all Defendants)

33.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraph 1 through 32 of this Complaint.

12

34. Plaintiff own or exercise exclusive control over rights in their catalogue, albums, and songs such as "*My Love is True*" and "*Little Red Riding Hood*".

35. All Defendants has knowingly infringed Plaintiff's exclusive rights in copyrighted sound recordings, including but not limited to their catalogue, albums, and songs such as "*My Love is True*" and "*Little Red Riding Hood*", by reproducing them in violation of 17 U.S.C. § 106(1).

36. All Defendants do not have authorization, permission, license, or consent to reproduce or otherwise use the Plaintiff Works.

37. Upon information and belief, Defendant Suno willfully used the reproduction of the Plaintiff Works to train its generative AI model infringing upon the copyright's materials.

38. Upon information and belief, Defendants used the reproduction of Plaintiff Works willfully infringing upon the copyright's materials by sampling. Specifically. Olivia Dean (United Kingdom) is a major pop-soul artist released "*Man I Need*" from her album *The Art of Loving* which was under business relationships with Defendant Capitol Records d/b/a EMI Recording, Defendant Island Records, Defendant Republic Records, Defendant UMG Recordings, Inc., and Defendant Universal Music Group Distribution, Corp. have infringed the copyrights of the Plaintiff's song and instrumentals, "*Little Red Riding Hood*".

13

39. Upon information and belief, Defendants used the reproduction of Plaintiff Works willfully infringing upon the copyright's materials by sampling. The-Dream (Terius Adamu Ya Gesteelde-Daimant Youngdell Nash) is a major American R&B, pop, and hip-hop artist released "*My Love*" featuring Mariah Carey from his album *Love vs. Money* which was under business relationships with Defendant UMG Recordings, Inc., Defendant Universal Music Group Distribution, Corp., Def Jam Recordings, Defendant Island Records, Defendant Capitol Records d/b/a EMI Recording, Defendant Radio Killa Records, and Defendant Warner Chappel Music d/b/a WC Music Corp., have infringed the copyrights of the Plaintiff's song and instrumentals, "*My Love Is True*".

40. Upon information and belief, Defendants used the reproduction of Plaintiff Works willfully infringing upon the copyright's materials by sampling. Mariah Carey is a major American R&B artist released "*We Belong Together*" from her album *The Emancipation of Mimi* which was under business relationships with Defendant UMG Recordings, Inc., Defendant Universal Music Group Distribution, Corp., Def Jam Recordings, Defendant Island Records, Defendant So So Def Records (Jermaine Dupri), have infringed the copyrights of the Plaintiff's song and instrumentals, "*My Love Is True*".

41. Each of Defendants' acts of infringement of Plaintiff Works are willful violation of 17 U.S.C. § 106.

42. As a direct and proximate result of all Defendants' infringement of Plaintiff's exclusive rights, all Defendants have caused and will continue to cause irreparable injury to Plaintiff for which Plaintiff have no adequate remedy at law. Plaintiff are therefore entitled to injunctive relief and to either actual damages and all Defendants' or statutory damages pursuant to 17 U.S.C. § 504(c), together with Plaintiff's cost and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## Other Matters

43. All conditions precedent to the bringing of this suit have occurred.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully request a judgment in their favor and against all Defendants as follows:

a. For a declaration that all Defendants have willfully infringed Plaintiff's protected sound recordings;

b. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' protected sound recordings, including a preliminary and permanent injunction requiring that all Defendants and its officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing, or

15

materially contributing to or participating in the infringement of any of Plaintiffs' exclusive rights under federal law;

c.  For statutory damages pursuant to17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from all Defendants' willful violations of Plaintiff's rights, including in an amount up to $150,000 per work infringed; or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and/or all Defendants' profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

d.  For an award of Plaintiff's cost and disbursements in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

e.  For an award of pre-judgment and post-judgment interest, to the fullest extent available, on any monetary award made part of the judgment against all Defendants; and,

f.  any further relief that this court deems just and proper, and any other appropriate relief of law and equity; economic losses on all claims allows allowed by law;

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL CLAIMS FOR WHICH TRIAL BY JURY IS PROPER.**

Respectfully submitted this 13th day of May 2026,

**The Roderick Van Daniel Law Firm, LLC**

*/s/ Dr. Roderick Van Daniel, Esquire*
Dr. Roderick Van Daniel, Esquire
No. ASB-9105-164X
1501 15th Avenue South; Suite 34
Birmingham, Alabama 35205
Tel. (205) 317 – 9321
Email: roddaniel205@gmail.com
vandaniel@rvdcivilrightsattorney.com

16